## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SUITABLE TECHNOLOGIES, INC.,[1] | Case No. 20- _10432_ (____) |
| Debtor. | |

### DEBTOR'S APPLICATION FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR PURSUANT TO 28 U.S.C. § 156(c), *NUNC PRO TUNC* TO THE PETITION DATE

Suitable Technologies, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby applies to the Court (the "**Application**"), pursuant to section 156(c) of title 28 of the United States Code, Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of an order, in substantially the form attached hereto as <u>Exhibit C</u> (the "**Proposed Order**"): (a) authorizing and approving the retention and appointment of Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent for the Office of the Clerk (the "**Clerk**") of the United States Bankruptcy Court for the District of Delaware (the "**Court**"); and (b) providing any additional relief required to effectuate the foregoing.  In support of this Application, the Debtor relies on and incorporates by reference the *Declaration of Charles C. Reardon in Support of Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently herewith, and the declaration of Nellwyn

---

[1] The last four digits of the Debtor's United States federal tax identification number are 7816.  The Debtor's mailing address is 921 East Charleston Road, Palo Alto, CA 94303.

Voorhies (the "**Voorhies Declaration**"), attached hereto as <u>Exhibit A</u>.  In further support of the Application, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the Court's entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.     The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), Bankruptcy Rule 2002, and Local Rule 2002-1(f).

**BACKGROUND**

4.     On the date hereof (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 <u>et</u> <u>seq</u>. (the "**Bankruptcy Code**").  As set forth in the First Day Declaration, the Debtor commenced this chapter 11 case (the "**Chapter 11 Case**") to continue the process of winding down its business affairs and to conduct a sale process for substantially all of its assets pursuant to section 363 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is continuing to manage its financial affairs as a debtor in possession.  No official

committees have been appointed in the Chapter 11 Case, and no request has been made for the appointment of a trustee or examiner.

5.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the First Day Declaration.

## RELIEF REQUESTED

6.      This Application is made for entry of the Proposed Order appointing DRC to act as the claims and noticing agent to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's Chapter 11 Case.  The Debtor's selection of DRC to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "**Claims Agent Protocol**").

7.      In accordance with the Claims Agent Protocol, prior to the selection of DRC, the Debtor obtained and reviewed engagement proposals from three other court-approved claims and noticing agents to ensure selection through a competitive process. The Debtor submits, based on all engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.  The terms of retention are set forth in the Standard Claims Administration and Noticing Agreement, dated February 10, 2020 (the "**Engagement Agreement**") annexed hereto as Exhibit B; *provided*, *however*, that, at this time, the Debtor is seeking approval solely of the terms and provisions as set forth in this Application and the Proposed Order attached hereto.

## QUALIFICATIONS

8.      DRC is a bankruptcy administrator specializing in claims management and legal administration services.  DRC provides comprehensive chapter 11 services, including

26002900.2

3

noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.

9. The Debtor anticipates that there will be hundreds of entities to be noticed in the Chapter 11 Case. In view of the number of anticipated claimants or potential claimants, the Debtor submits that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

10. DRC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, and facilitating other administrative aspects of chapter 11 cases. DRC has provided identical or substantially similar services in other chapter 11 cases filed in this District and elsewhere, including, among others: In re Borden Dairy Company, Case No. 20-10010 (CSS); In re uBiome Inc., Case No. 19-11938 (LSS); In re Open Road Films, LLC, Case No. 18-12012 (LSS).

11. By appointing DRC as the claims and noticing agent in the Chapter 11 Case, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## SERVICES TO BE RENDERED

12. This Application pertains only to the work to be performed by DRC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f), and any work to be performed by DRC outside of this scope is not covered by this Application or by any Order granting approval hereof. By separate application, the Debtor will seek to retain DRC as its administrative advisor under section 327(a) of the Bankruptcy Code. As it relates to this Application, DRC will perform the following tasks in its role as claims and noticing agent, as well as all quality control relating thereto:

26002900.2

4

a.    Prepare and serve required notices and documents in the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court including: (i) notice of the commencement of the Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of a chapter 11 plan for the Debtor, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any chapter 11 plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

b.    Maintain copies of all proofs of claim filed in the Chapter 11 Case;

c.    Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

d.    Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

e.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

f.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

g.    For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of

persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

h.    Process all proofs of claim received, including those received by the Clerk, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

i.    Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*); and (vi) any disposition of the claim;

j.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

k.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

m.    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

n.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

o.    Identify and correct any incomplete addresses in any mailing or service lists;

p.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

q.    If the Chapter 11 Case is converted to chapter 7, contact the Clerk within three (3) days of the notice to DRC of entry of the order converting the case;

26002900.2

r.      Thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed Order dismissing DRC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

s.      Within seven (7) days of notice to DRC of entry of an order closing the Chapter 11 Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Chapter 11 Case; and

t.      At the close of the Chapter 11 Case, (i) box and transport all original documents, in proper format, as provided by the Clerk's Office, to (A) the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, PA 19154 or (B) any other location requested by the Clerk, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

13.     The Claims Register shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

14.     DRC shall not employ any past or present employee of the Debtor for work that involves the Debtor's Chapter 11 Case.

## COMPENSATION

15.     The Debtor respectfully requests that the undisputed fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.

16.     DRC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and

any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.    Prior to the Petition Date, the Debtor provided DRC a retainer in the amount of $20,000, of which $12,169.45 was applied to prepetition services.  DRC seeks to first apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the Chapter 11 Case as security for the payment of fees and expenses under the Engagement Agreement.  Following the termination of the Engagement Agreement, DRC will return to the Debtor any amount of the retainer that remains.

18.    Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from DRC's fraud, gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.  The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims agent in this Chapter 11 Case.  Moreover, consistent with the practice in this jurisdiction, the Debtor requested, and DRC has agreed, that the Court approve the indemnification provisions reflected in the Engagement Agreement subject to the modifications set forth in the Proposed Order.  The Debtor believes that the proposed modifications to the indemnification provisions of the Engagement Agreement are appropriate

under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

## DISINTERESTEDNESS

19.    In connection with its retention as claims and noticing agent, DRC represents in the Voorhies Declaration, among other things, that:

a.    DRC is not a creditor of the Debtor;

b.    DRC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

c.    DRC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in this Chapter 11 Case;

d.    By accepting employment in this Chapter 11 Case, DRC waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

e.    In its capacity as the claims and noticing agent in this Chapter 11 Case, DRC will not be an agent of the United States and will not act on behalf of the United States;

f.    DRC will not employ any past or present employees of the Debtor in connection with its work as the claims and noticing agent in this Chapter 11 Case;

g.    In its capacity as the claims and noticing agent in this Chapter 11 Case, DRC will not intentionally misrepresent any fact to any person;

h.    DRC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i.    DRC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    None of the services provided by DRC as the claims and noticing agent in this Chapter 11 Case shall be at the expense of the Clerk.

26002900.2

20. To the extent that there is any inconsistency between this Application, the Retention Order, and the Engagement Agreement, the Retention Order shall govern.

21. This Application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application in use in this Court.

## BASIS FOR RELIEF

### I. Retention and Employment of DRC as Claims and Noticing Agent Is Permitted.

22. Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002(f). Under Bankruptcy Rule 2002(f), this Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes this Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23. In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than two hundred (200) creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform [claims and noticing services].

Del. Bankr. L.R. 2002-1(f).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower this Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtor's estate bear the cost of such services.

24.    Accordingly, for all of the foregoing reasons, the Debtor believes that the retention of DRC as the claims and noticing agent in this Chapter 11 Case is necessary and in the best interests of the Debtor, its estate and creditors, and all parties in interest.  Furthermore, the Debtor respectfully submits that the fees and expenses that would be incurred by DRC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

25.    By separate application, the Debtor intends to seek authorization to retain and employ DRC as the administrative agent in this Chapter 11 Case, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Case will require DRC to perform duties outside the scope of 28 U.S.C. § 156(c).

## II.    *Nunc Pro Tunc* Relief is Appropriate.

26.    Pursuant to the Debtor's request, DRC has agreed to serve as the claims and noticing agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention *nunc pro tunc* to the Petition Date, so that DRC may be compensated for its services prior to approval of this Application.  The Debtor believes that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because DRC has provided and continues to provide valuable services to the Debtor's estate in the interim period.  The Local Rules empower courts in this district to approve *nunc pro tunc* employment, and the Debtor submits that such approval is justified here.  See, e.g.,

Del. Bankr. L.R. 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

## NOTICE

27.     Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel for the DIP Lender; and (v) those creditors holding the largest unsecured claims against the Debtor's estate (excluding insiders).  As this Application is seeking "first day" relief, within two business days of the hearing on this Application, the Debtor will serve copies of this Application and any order entered in respect to this Application as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, in the Voorhies Declaration, and in the First Day Declaration, the Debtor respectfully requests that this Court enter the Proposed Order, authorizing DRC to act as claims and noticing agent for the maintenance and processing of claims and the distribution of notices.

Dated:  February 26, 2020

Respectfully submitted,

Suitable Technologies, Inc.,
Debtor and Debtor in Possession

*/s/ Charles C. Reardon*
Charles C. Reardon
Chief Restructuring Officer

26002900.2

## Exhibit A

**Declaration of Nellwyn Voorhies**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SUITABLE TECHNOLOGIES, INC.,[1] | Case No. 20- _10432_ (____) |
| Debtor. | |

## DECLARATION OF NELLWYN VOORHIES IN SUPPORT OF DEBTOR'S APPLICATION FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR PURSUANT TO 28 U.S.C. § 156(c), *NUNC PRO TUNC* TO THE PETITION DATE

I, Nellwyn Voorhies, declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Executive Director with Donlin, Recano & Company, Inc. ("**DRC**"), an administrative services firm that specializes in the administration of large chapter 11 cases, whose offices are located at 6201 15th Avenue, Brooklyn, New York 11219.

2. I submit this declaration in support of the *Debtor's Application for an Order Appointing Donlin, Recano & Company, Inc. as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. § 156(c),* Nunc Pro Tunc *to the Petition Date* (the "**Application**")[2] filed by the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") for an order appointing DRC as claims and noticing agent (the "**Claims and Noticing Agent**") for the Debtor pursuant to 28 U.S.C. § 156(c). Except as otherwise noted, I have personal knowledge of the facts contained in this declaration.

---

[1] The last four digits of the Debtor's United States federal tax identification number are 7816. The Debtor's mailing address is 921 East Charleston Road, Palo Alto, CA 94303.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

26002900.2

3.      As custodian of the Court's records pursuant to 28 U.S.C. § 156(c), DRC

will perform, at the request of the Office of the Clerk of the Court (the "**Clerk**"), the noticing and

claims related services specified in the Application and the Engagement Agreement.  In addition,

at the Debtor's request, DRC will perform such other noticing, claims, administrative, technical,

and support services specified in the Application and the Engagement Agreement.

4.      DRC is one of the country's leading chapter 11 administrators, with

experience in noticing, claims administration, and facilitating other administrative aspects of

chapter 11 cases.  DRC has provided identical or substantially similar services in other chapter

11 cases filed in this District and elsewhere, including, among others:   In re Borden Dairy

Company, Case No. 20-10010 (CSS); In re uBiome Inc., Case No. 19-11938 (LSS); In re Open

Road Films, LLC, Case No. 18-12012 (LSS).

5.      I represent, among other things, that:

    a.      DRC is not a creditor of the Debtor;

    b.      DRC is a "disinterested person," as that term is defined in section
        101(14) of the Bankruptcy Code, as modified by section 1107(b)
        of the Bankruptcy Code;

    c.      DRC will not consider itself employed by the United States
        government and will not seek any compensation from the United
        States government in its capacity as the claims and noticing agent
        in this Chapter 11 Case;

    d.      By accepting employment in this Chapter 11 Case, DRC waives
        any rights to receive compensation from the United States
        government in connection with this Chapter 11 Case;

    e.      In its capacity as the claims and noticing agent in this Chapter 11
        Case, DRC will not be an agent of the United States and will not
        act on behalf of the United States;

    f.      DRC will not employ any past or present employees of the Debtor
        in connection with its work as the claims and noticing agent in this
        Chapter 11 Case;

g.      In its capacity as the claims and noticing agent in this Chapter 11 Case, DRC will not intentionally misrepresent any fact to any person;

h.      DRC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i.      DRC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.      None of the services provided by DRC as the claims and noticing agent in this Chapter 11 Case shall be at the expense of the Clerk.

6.      To the best of my knowledge and belief, and based solely upon information provided to me by the Debtor and except as provided herein, neither DRC, nor any employee of DRC, has any materially adverse connections to the Debtor, its estate, its creditors, or equity interest holders, or other relevant parties, its respective attorneys and accountants that would conflict with the scope of DRC's retention or would create any interest adverse to the Debtor's estate or any other party-in-interest.

7.      The Debtor has many creditors and, from time to time, DRC may have represented certain of those creditors in completely unrelated matters.  Proposed bankruptcy counsel for the Debtor has provided me with a list of the Debtor's creditors and other parties-in-interest (the "**Interested Parties List**"), a copy of which is attached hereto as <u>Exhibit 1</u>.  I have caused an examination of these records to be made to determine which, if any, of the parties on the Interested Parties List DRC may have represented in the past or may be representing at the present time.  This search has disclosed that, to the best of my present knowledge, DRC has not in the past and is not currently representing any of the parties on the Interested Parties List.

8.      In addition, DRC has identified numerous vendors appearing on the Interested Parties List that are also vendors of DRC, but DRC has not in the past, and is not currently, representing any of those vendors.

26002900.2

9.      DRC is an affiliate of American Stock Transfer & Trust Company, LLC ("**AST**").  AST is a global financial communications and stakeholder management company. Within the AST corporate structure, DRC operates as a separate and independent legal entity. Given the legal and operational separateness of DRC from AST, DRC does not believe that any relationships that AST and its affiliates maintain would create an interest of DRC that would be materially adverse to the Debtor's estate or any class of creditors or equity security holders.

10.     There may be other creditors of the Debtor that DRC may have or may be presently representing, but in no event is DRC representing any other creditor with respect to the Debtor's bankruptcy proceeding.  To the extent that I become aware of DRC having represented any other creditors of the Debtor, I will file a supplemental declaration advising the Court of the same.  To the extent that DRC discovers any facts bearing on matters described herein, DRC will supplement the information contained herein.

11.     Notwithstanding anything contained herein, as part of its diverse business, DRC is the noticing, claims, and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may be creditors or represent creditors, and parties-in-interest in this Chapter 11 Case.  In addition, DRC has in the past and will likely in the future continue working with other professionals involved in this Chapter 11 Case in matters unrelated to this Chapter 11 Case.  Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtor's estate, with respect to the matter upon which DRC is to be engaged.  Additionally, DRC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtor.  However, to the best of

26002900.2

4

my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to this Chapter 11 Case.

12.    Based upon the information available to me, I believe that DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that DRC and its personnel: (a) are not creditors, equity security holders, or insiders of the Debtor; (b) are not and were not, within two years before the date of the filing of this Chapter 11 Case, a director, officer, or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

13.    Prior to the filing of this Chapter 11 Case, the Debtor paid DRC a retainer of $20,000, of which $12,169.45 was applied to prepetition services.  DRC seeks to first apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the Chapter 11 Case as security for the payment of fees and expenses under the Engagement Agreement.  Following the termination of the Engagement Agreement, DRC will return to the Debtor any amount of the retainer that remains.

14.    Under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from DRC's fraud, gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.

15.    In performing the services identified above, DRC will charge the rates set forth in Schedule A to the Engagement Agreement annexed to the Application as <u>Exhibit B</u>.

26002900.2

16.     The rates set forth therein are as favorable and reasonable as the prices DRC charges in cases in which it has been retained to perform similar bankruptcy related services.

17.     DRC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: February 26, 2020                    */s/ Nellwyn Voorhies*
                                            Nellwyn Voorhies
                                            Executive Director
                                            Donlin, Recano & Company, Inc.

**Exhibit 1**

**Interested Parties List**

**INTERESTED PARTIES**

| | |
|---|---|
| SUITABLE TECHNOLOGIES INC. | DEBTOR |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | DEBTOR'S PROFESSIONAL |
| DONLIN RECANO, & COMPANY, INC. | DEBTOR'S PROFESSIONAL |
| ASGAARD CAPITAL | DEBTOR'S PROFESSIONAL |
| STOUT RISIUS ROSS, LLC | DEBTOR'S PROFESSIONAL |
| GREENHEART INVESTMENTS, LLC | LENDERS |
| MAGICHEART INVESTMENTS, LLC. | LENDERS |
| SCOTT HASSAN | BOARD MEMBER (PAST AND PRESENT) |
| RONALD BARLIANT | BOARD MEMBER (PAST AND PRESENT) |
| FEDERAL INSURANCE COMPANY | INSURANCE PROVIDER |
| ACE AMERICAN INSURANCE CO. | INSURANCE PROVIDER |
| CALIFORNIA FRANCHISE TAX BOARD | TAXING AUTHORITY |
| CALIFORNIA STATE BOARD OF EQUALIZATION SBOE | TAXING AUTHORITY |
| CALIFORNIA DEPT OF TAX AND FEE ADMINISTRATION | TAXING AUTHORITY |
| CALIFORNIA DEPT OF TAX AND FEE ADMINISTRATION | TAXING AUTHORITY |
| COLORADO DEPRTMENT OF REVENUE | TAXING AUTHORITY |
| COMMONWEALTH OF MASSACHUSETTS DEPT OF REVENUE | TAXING AUTHORITY |
| INDIANA DEPT OF REVENUE | TAXING AUTHORITY |
| INTERNAL REVENUE SVC | TAXING AUTHORITY |
| KANSAS DEPT OF REVENUE | TAXING AUTHORITY |
| MICHIGAN DEPT OF TREASURY | TAXING AUTHORITY |
| MINNESOTA DEPT OF REVENUE | TAXING AUTHORITY |
| MISSOURI DEPT OF REVENUE | TAXING AUTHORITY |
| NEVADA DEPT OF TAXATION | TAXING AUTHORITY |
| UTAH STATE TAX COMMISSION | TAXING AUTHORITY |
| WASHINGTON STATE DEPT OF REVENUE | TAXING AUTHORITY |
| STATE OF DELAWARE DIVISION OF REVENUE | TAXING AUTHORITY |
| COUNTY OF SANTA CLARA, DEPT OF TAX AND COLLECTIONS | TAXING AUTHORITY |
| CITY OF KANSAS CITY MISSOURI, REVENUE DIVISION | TAXING AUTHORITY |
| CITY OF PALO ALTO, CITY HALL TAX COLLECTOR PERMITS | TAXING AUTHORITY |
| STATE OF CALIFORNIA, EMPLOYMENT DEVELOPMENT DEPT | TAXING AUTHORITY |
| STATE OF COLORADO, UNEMPLOYMENT INSURANCE OPERATIONS | TAXING AUTHORITY |
| STATE OF INDIANA, DEPT OF WORKFORCE DEVELOPMENT | TAXING AUTHORITY |
| STATE OF KANSAS, DEPT OF LABOR | TAXING AUTHORITY |
| STATE OF MASSACHUSETTS, DIVISION OF EMPLOYMENT AND TRAINING | TAXING AUTHORITY |
| STATE OF MICHIGAN, DEPT OF LICENSING AND REGULATORY AFFAIRS | TAXING AUTHORITY |
| STATE OF MINNESOTA, DEPT OF REVENUE | TAXING AUTHORITY |
| STATE OF MISSOURI, DIVISION OF EMPLOYMENT SECURITY | TAXING AUTHORITY |
| STATE OF NEVADA, DEPT OF EMPLOYMENT TRAINING AND REHABILITATION | TAXING AUTHORITY |
| STATE OF UTAH, DEPT OF WORKFORCE SERVICES | TAXING AUTHORITY |
| STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPT | TAXING AUTHORITY |
| AT&T | UTILITY PROVIDER |
| CITY OF PALO ALTO UTILITIES | UTILITY PROVIDER |
| EQUINIX | UTILITY PROVIDER |
| LEVEL 3 COMMUNICATIONS, LLC (A/K/A CENTURY LINK) | UTILITY PROVIDER |
| VERIZON ENTERPRISE | UTILITY PROVIDER |
| WILINE NETWORKS INC. | UTILITY PROVIDER |

**INTERESTED PARTIES**

| | |
|---|---|
| 1200 CHIEFS OWNER, LLC | LANDLORD |
| SILICON VALLEY BANK | BANK |
| AIRGAS USA, LLC | TOP UNSECURED CREDITOR |
| AMERICAN REGISTRY FOR INTERNET NUMBERS | TOP UNSECURED CREDITOR |
| DIGITAL BH 800 LLC | TOP UNSECURED CREDITOR |
| EQUINIX, INC. | TOP UNSECURED CREDITOR |
| LEVEL 3 COMMUNICATIONS (AKA CENTURYLINK) | TOP UNSECURED CREDITOR |
| MORRISON & FOERSTER LLP | TOP UNSECURED CREDITOR |
| TUV RHEINLAND NORTH AMERICA | TOP UNSECURED CREDITOR |
| CHRISTOPHER S. SONTCHI | DELAWARE BANKRUPTCY JUDGE |
| BRENDAN L. SHANNON | DELAWARE BANKRUPTCY JUDGE |
| JOHN T. DORSEY | DELAWARE BANKRUPTCY JUDGE |
| KAREN B. OWENS | DELAWARE BANKRUPTCY JUDGE |
| KEVIN GROSS | DELAWARE BANKRUPTCY JUDGE |
| LAURIE SELBER SILVERSTEIN | DELAWARE BANKRUPTCY JUDGE |
| MARY F. WALRATH | DELAWARE BANKRUPTCY JUDGE |
| ANDREW R. VARA | DELAWARE U.S. TRUSTEE'S OFFICE |
| BENJAMIN HACKMAN | DELAWARE U.S. TRUSTEE'S OFFICE |
| CHRISTINE GREEN | DELAWARE U.S. TRUSTEE'S OFFICE |
| DAVID BUCHBINDER | DELAWARE U.S. TRUSTEE'S OFFICE |
| DAVID VILLAGRANA | DELAWARE U.S. TRUSTEE'S OFFICE |
| DIANE GIORDANO | DELAWARE U.S. TRUSTEE'S OFFICE |
| DION WYNN | DELAWARE U.S. TRUSTEE'S OFFICE |
| EDITH A. SERRANO | DELAWARE U.S. TRUSTEE'S OFFICE |
| HANNAH M. MCCOLLUM | DELAWARE U.S. TRUSTEE'S OFFICE |
| HOLLY DICE | DELAWARE U.S. TRUSTEE'S OFFICE |
| JAMES R. O'MALLEY | DELAWARE U.S. TRUSTEE'S OFFICE |
| JANE LEAMY | DELAWARE U.S. TRUSTEE'S OFFICE |
| JEFFREY HECK | DELAWARE U.S. TRUSTEE'S OFFICE |
| JULIET SARKESSIAN | DELAWARE U.S. TRUSTEE'S OFFICE |
| KAREN STARR | DELAWARE U.S. TRUSTEE'S OFFICE |
| LAUREN ATTIX | DELAWARE U.S. TRUSTEE'S OFFICE |
| LINDA CASEY | DELAWARE U.S. TRUSTEE'S OFFICE |
| LINDA RICHENDERFER | DELAWARE U.S. TRUSTEE'S OFFICE |
| MICHAEL PANACIO | DELAWARE U.S. TRUSTEE'S OFFICE |
| RAMONA VINSON | DELAWARE U.S. TRUSTEE'S OFFICE |
| RICHARD SCHEPACARTER | DELAWARE U.S. TRUSTEE'S OFFICE |
| ROBERT AGARWAL | DELAWARE U.S. TRUSTEE'S OFFICE |
| SHAKIMA L. DORTCH | DELAWARE U.S. TRUSTEE'S OFFICE |
| T. PATRICK TINKER | DELAWARE U.S. TRUSTEE'S OFFICE |
| TIMOTHY J. FOX, JR. | DELAWARE U.S. TRUSTEE'S OFFICE |

**<u>Exhibit B</u>**

**Engagement Agreement**

## Donlin, Recano & Company, Inc.

### STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### <u>TERMS AND CONDITIONS</u>

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide Suitable Technologies, Inc., (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein.  Client agrees and understands that none of the services constitute legal advice.

**1.  <u>SERVICES:</u>** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2.  <u>CHARGES</u>**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC.  Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges.  Checks are accepted subject to collection and the date of collection shall be deemed the date of payment.  Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC.  In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC.  The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses.  In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities.  This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.  In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s).  In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3.  <u>TRANSPORTATION OF DATA</u>**:  Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office.  In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data.  Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located:  New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so.  If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**Donlin, Recano & Company, Inc.**

**4. EVERGREEN RETAINER & INVOICES**:   At the commencement of this engagement, or shortly thereafter, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $20,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement.  DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer.  Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made.  DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto, but with a 15% discount on all hourly rates.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month.  Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach").  If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable.  Late charges shall not accrue on any amounts in dispute.  Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**5. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility.  Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address.  However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**:  All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**:  Client acknowledges and agrees that DRC will take direction from the

**Donlin, Recano & Company, Inc.**

Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's actual fraud, gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the

**Donlin, Recano & Company, Inc.**

services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**13. OWNERSHIP OF PROGRAMS**:  Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC.  All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. SYSTEMS IMPROVEMENTS:**  DRC's policy is to provide continuous improvements in the quality of service to its clients.  DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. UNUSUAL MEASURES**:  Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client.  Said charges may be required in advance if DRC deems it appropriate.

**16.  JURISDICTION.**  In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17.  FORCE MAJEURE.**  Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18.  NOTICE.**  Any notice or other communication required or permitted hereunder shall be in writing and shall be sent by overnight courier.  Any such notice shall be deemed given one business day after delivery to such courier, as follows:  if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York, New York 11219, Attention:  Nellwyn Voorhies, Esq.; if to the Client, Suitable Technologies, Inc., c/o Asgaard Capital LLC, 1934 Old Gallows Rd., Suite 350, Tysons Corner,  VA 22183, Attention:  Charles C. Reardon, Chief Restructuring Officer), with a copy to the Chief Restructuring Officer via email at creardon@asgaardcapital.com and to Client's counsel, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attention:  Robert F. Poppiti, Jr., Esq. and via email at rpoppiti@ycst.com.

**19.  GOVERNING LAW.**  This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20.  SEVERABILITY.**  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**Donlin, Recano & Company, Inc.**

**21.  ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.  Client will not employ any DRC employee within two (2) years from the termination of this Agreement.  The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By:          Nellwyn Voorhies

Signature:

Title:        Executive Director

Date:        February 10, 2020

Accepted and Approved:

Suitable Technologies, Inc.

By:          Charles C. Reardon

Signature:    Charles C. Reardon

Title:        Chief Restructuring Officer

Date:        2/14/2020

This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

**Donlin, Recano & Company, Inc.**

**SCHEDULE A**

| Professional Service | Hourly Rates |
|---|---|
| Executive Management | No charge |
| Senior Bankruptcy Consultant | $140 - $170 |
| Case Manager | $70 - $150 |
| Consultant/Analyst | $80 - $140 |
| Technology/Programming Consultant | $70 - $90 |
| Clerical | $25 - $40 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.08 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.05 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $170 as needed |
| Public Securities Solicitation | N/A |
| Schedule/SOFA preparation | $90 - $185 as needed |

| Claims Docketing and Management | |
|---|---|
| Website Development | $90 per Hour |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.05 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |

| Miscellaneous | |
|---|---|
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |

DRC Donlin Recano

**Donlin, Recano & Company, Inc.**

**Exhibit C**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SUITABLE TECHNOLOGIES, INC.,[1] | Case No. 20- 10432  (____) |
| Debtor. | **Ref Docket No. ___** |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR PURSUANT TO 28 U.S.C. § 156(c), *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "**Application**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for the entry of an order pursuant to section 156(c) of title 28 of the United States Code, Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing the Debtor to retain and appoint Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent in the Chapter 11 Case to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtor's case, and (iii) provide such other administrative services—as required by the Debtor—that would fall within of the purview of services to be provided by the Clerk's Office and upon the affidavit; and the Debtor having estimated that there are in excess of 200 creditors in these cases, many of which are expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being

---

[1] The last four digits of the Debtor's United States federal tax identification number are 7816. The Debtor's mailing address is 921 East Charleston Road, Palo Alto, CA 94303.

authorized under 28 U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and upon consideration of the Voorhies Declaration submitted in support of the Application; and upon consideration of the First Day Declaration; and the Court being satisfied, based on the representations made in the Voorhies Declaration, that DRC is disinterested and does not represent or hold any interest adverse to the Debtor or the Debtor's estate; and it appearing that the Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 1334 and 157, and the Amended Standing Order; and it appearing that the Application is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this Chapter 11 Case and of the Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Application has been given under the circumstances, and that no other or further notice need be given; and it appearing that the employment of DRC is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.      The Debtor is authorized to retain DRC effective as of the Petition Date under the terms of the Engagement Agreement, and DRC is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in the Chapter 11 Case, and all related tasks, all as described in the Application.

26002900.2

3.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Case and is authorized and directed to maintain an official claims register for the Debtor, to provide the Clerk with a certified duplicate thereof upon the request of the Clerk, and to provide public access to every proof of claim unless otherwise ordered by the Court.

4.      DRC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      DRC is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtor is authorized to compensate DRC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      DRC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for any official committee, if any, monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

26002900.2

3

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of DRC under this Order shall be an administrative expense of the Debtor's estate.

10.      The portion of section 4 of the Engagement Agreement addressing late charges shall be null, void, and of no further force and effect for postpetition services rendered by DRC.

11.      DRC may apply its prepetition retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, DRC may hold its retainer under the Engagement Agreement during the Chapter 11 Case as security for the payment of fees and expenses under the Engagement Agreement.  Following the termination of the Engagement Agreement, DRC shall return to the Debtor any amount of the retainer that remains.

12.      The Debtor shall indemnify DRC[2] under the terms of the Engagement Agreement.

13.      DRC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

14.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from DRC's fraud, gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtor alleges the breach of DRC's contractual

---

[2] For the purposes of paragraphs 12 to 15 of this Order only, the term "DRC" shall include all "Indemnified Parties," as that term is defined in the Engagement Agreement.

obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., et al., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which DRC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

15.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Case (that order having become a final order no longer subject to appeal) or (ii) the entry of an order closing the Chapter 11 Case, DRC believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, DRC must file an application therefore in this Court, and the Debtor may not pay any such amounts to DRC before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by DRC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify DRC. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution or reimbursement.

16.     In the event DRC is unable to provide the services set out in this Order, DRC will immediately notify the Clerk and Debtor's attorneys and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's attorneys.

26002900.2

17.     Any services DRC will provide relating to the Debtor's schedules of assets and liabilities and statement of financial affairs shall be limited to administrative and ministerial services. The Debtor shall remain responsible for the content and accuracy of its schedules of assets and liabilities and statement of financial affairs.

18.     The Debtor may submit a separate retention application, pursuant to Bankruptcy Code section 327 and/or any applicable law, for work that is to be performed by DRC that is not specifically authorized by this Order.

19.     The Debtor and DRC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

20.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction and power with respect to all matters arising from or related to the implementation of this Order.

21.     DRC shall not cease providing claims processing services during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

22.     In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

Dated: _____, 2020
          Wilmington, Delaware       _____

                                      United States Bankruptcy Judge

26002900.2

6